John Shaeffer (SBN 138331)
jshaeffer@foxrothschild.com
Jesse Koppin (SBN 270178)
jkoppin@foxrothschild.com
**FOX ROTHSCHILD LLP**
1800 Century Park East, Suite 300
Los Angeles, California 90067-1506
Telephone:  (310) 598-4150
Facsimile:  (310) 556-9828

David F. Faustman (SBN 81862)
dfaustman@foxrothschild.com
L. Peter Ryan (SBN 134291)
pryan@foxrothschild.com
**FOX ROTHSCHILD LLP**
345 California Street, Suite 2200
San Francisco, California 94104
Telephone:  (415) 364-5540
Facsimile:  (415) 391-4436

Attorneys for Plaintiffs THE VIKING
CORPORATION; VIKING GROUP,
INC.; and SUPPLY NETWORK, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE VIKING CORPORATION; VIKING GROUP, INC.; and SUPPLY NETWORK, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HAROLD RODGERS, an individual; JOHN PATRICK HULLEMAN, an individual; FIRE SPRINKLER SYSTEMS, INC.; and THORPE DESIGN, INC., <br><br> Defendants. | CASE NO. _____ <br><br> **COMPLAINT FOR VIOLATION OF THE LANHAM ACT [U.S.C. § 1125(a)]; UNFAIR BUSINESS PRACTICES [CAL. BUS. & PROF. CODE § 17200]; INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND DAMAGES; COMMON LAW TRADE DISPARAGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

I.    **SUMMARY OF ACTION**

1.    By way of this Complaint, Plaintiffs ("Plaintiffs" or collectively "VI-KING") seek monetary damages to compensate them for the actual harm that was inflicted by the Defendants as a result of their false campaign to disparage products manufactured and sold by VIKING, in particular that product commonly known as the VK457 Sprinkler Head (the "VK457").  Plaintiffs also seek a permanent injunction to stop the Defendants from disseminating false and misleading statements about Plaintiffs' products.  VIKING has suffered and continues to suffer irreparable harm and monetary damages as a result of the Defendants' false and misleading statements to homebuilders that specify the VK457 for use in homes they are building and to other installers of fire sprinkler systems that purchase VK457 sprinklers.

2.    VIKING manufactures and sells the VK457.  The Defendants are the installers of fire protection sprinkler heads in thousands of homes in California and the Western United States.  After unanticipated incidences of activations of VK457 sprinkler heads, the Defendants began disseminating blatantly false and misleading statements about VIKING's products, specifically the VK457 to VIKING's existing and prospective customers, in violation of the Lanham Act §§Se 43(a), 15 U.S.C. § 1125 and the related laws of the state of California.

II.    **THE PARTIES**

3.    Plaintiffs are Michigan corporations, with their principal place of business in Hastings, Michigan.  VIKING manufactures residential and commercial fire sprinkler systems that are sold to customers around the world providing fire protection for homes and other structures.

4.    Defendant FIRE SPRINKLER SYSTEMS, INC. ("FSS") is a California corporation with its principal place of business at 705 E. Harrison, Suite 200, Corona, California.  Non-party KURT VOLMER is an employee of FSS and participated in the dissemination of the false and misleading information about the VK457.

5.      Defendant THORPE DESIGN, INC. ("THORPE") is a California cor-
poration with its principal place of business at P.O. Box 1149, Brentwood, Califor-
nia 94513.

6.      Defendant HAROLD RODGERS ("RODGERS"), is an individual and
a principal owner of defendant FSS, who resides in California.  Plaintiffs are in-
formed and believe and based thereon allege that RODGERS participated directly
in the making of numerous false and/or misleading statements of fact disparaging
Plaintiff VIKING and its products.

7.      Defendant JOHN PATRICK HULLEMAN ("HULLEMAN") is an in-
dividual and principal owner of defendant THORPE, who resides in California.
Plaintiffs are informed and believe and based thereon allege that HULLEMAN par-
ticipated directly in the making of numerous false and/or misleading statements
disparaging Plaintiff VIKING and its products.

8.      Non-party FRED J. KNEZ ("KNEZ") is a licensed California attorney
employed by all of the Defendants in this action, whose business address is a Post
Office Box in Riverside, California.  KNEZ is represented to be one of the authors
of false materials referenced herein.  Plaintiffs are informed and believe and based
thereon allege that KNEZ participated directly in the making of numerous false
and/or misleading statements disparaging VIKING and its products.

9.      KNEZ acted as agent for the Defendants.

III.   **JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over this action pursuant to
28 U.S.C. §§ 1331, 1332 and 1367.

11.     This Court has jurisdiction over all the Defendants because they trans-
act business in the State of California, and are otherwise subject to jurisdiction in
this state.  In addition, the Defendants have committed tortious acts within this state
and/or caused injury in this state by an act or omission outside this state and en-
gaged in other persistent courses of conduct in this state.

-2-

12.     Venue in this District is proper pursuant to 28 U.S.C. § 1391.

IV.   **ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

13.     The Defendants and their attorney KNEZ engaged in a malicious two-year campaign of unprivileged disparagement of VIKING and its products, as illustrated by the following examples.

14.     On or about December 17, 2014, RODGERS sent a mass group email and an attached spreadsheet to several major Southern California homebuilders containing false and misleading information about the alleged causes of certain VK457 activations.  Many of the homebuilders that received the email and attachment were well-known and substantial users of VIKING products, including D.R. Horton, Pulte, Lennar, VanDaele, and Melia Homes.  RODGERS knew at the time he sent his email that the homebuilders all specified the use of the VK457 in the plans and specifications for the homes the companies had under construction.  In the email RODGERS stated, "I strongly recommend changing to an alternative supplier . . .."  RODGERS had no reasonable basis to make such a suggestion and knew or should have known that damage would be caused to VIKING as a result of his mass email communication.  In fact, although RODGERS was then in possession of a report from VIKING detailing its position on the cause of the activations (which cause was not due to manufacturing defect), RODGERS included only a portion of the VIKING report in an effort to conceal evidence and mislead the homebuilders.  As specifically alleged below, certain of the homebuilders stopped specifying VIKING and/or ceased use of VIKING products after the communication was sent.

15.     On or about July 1, 2015, VIKING's attorneys wrote to KNEZ seeking (among other things) immediate assurances that FSS, through RODGERS, would cease circulating false assertions that were "clearly designed to damage Viking's professional reputation and compromise Viking's existing and future business interests."  That demand was ignored.  VIKING then learned in the months following

-3-

1    that other installers of fire sprinkler protection systems (who were purchasers of its
2    products), including Symons Fire Protection, KPS Sprinkler, Millenium Fire Pro-
3    tection-Camarillo, A & D Fire Protection and Victory Fire Protection, all were con-
4    tacted by RODGERS and provided with the false information provided in the
5    December 17, 2014 mass group email.

6         16.    In October 2015, VIKING learned from face-to-face meetings that ma-
7    jor homebuilder customers of VIKING (including Lennar, D.R. Horton, Pulte, and
8    Shea) had again been contacted by RODGERS, who falsely told them that the
9    VK457 product was defective.  These communications were intended to disrupt
10   VIKING's customer relationships and indeed did so as VIKING was told that the
11   homebuilders would cease use of the VK457 as a result of the information provided
12   by RODGERS.

13        17.    In November 2015, VIKING again warned KNEZ about the "repeated
14   unfounded gross misrepresentations" being made by and on behalf of his client, and
15   demanded that the "slanderous and libelous efforts to interfere with VIKING's con-
16   tractual relations cease forthwith."  Again the warning was ignored, demonstrating
17   malice.  At this time, VIKING was told by many of its homebuilder users, includ-
18   ing Pulte, that they received a "weekly Harold list" (referring to defendant HAR-
19   OLD RODGERS) purporting to show a list of non-fire activations prepared by FSS
20   and THORPE.  These likewise contained untrue information.

21        18.    In December 2015, KNEZ, acting on behalf of FSS and THORPE,
22   communicated false and disparaging information about VIKING products to Trian-
23   gle Fire Systems Limited in the United Kingdom.

24        19.    On March 8, 2016, KNEZ, acting on behalf of FSS and THORPE, sent
25   a mass mailing to "Developer-Builder" containing false and disparaging infor-
26   mation about VIKING products, including the representation that "millions of
27   VK457 sprinkler heads are still in homes and at risk of activating prematurely."
28   The exact recipients of this mailing are currently unknown, but this allegation will

-4-

1  be amended after commencement of discovery in the action.  The final sentence of

2  the letter states "[w]e would like to meet with you either individually or collective-

3  ly to discuss how we could develop a mutually agreeable program for replacement

4  of those VK457 sprinkler heads that remain in homes at this time."  The Defend-

5  ants' malicious intent to harm VIKING, and in the process create significant new

6  business for themselves, cannot be more clear.

7       20.    The false and misleading statements within this letter directed to

8  builders regarding the VK457 are summarized as follows:

9            a.    From letter:  "We believe there are several factors contributing

10  to the premature activations of the VK457.  These factors include a design change

11  in the fusible link of the VK457, from its predecessor the VK456."  Actual truth:

12  While the VK456 predates the VK457, they are two different sprinklers, and have

13  different Underwriters Laboratories ("UL") listings.  The performance capabilities

14  are completely different.  There has not been a design change to the VK457.  The

15  component being referenced as changed has been used in Viking sprinklers since

16  2001.

17           b.    From letter:  "Viking reduced the size of the link by 50%."  Ac-

18  tual truth:  Viking uses the same size link that has be used in its designs since 2001.

19  The letter implies that the link was made smaller as part of an intentional redesign

20  process.  This is not true.  No such redesign occurred.

21           c.    From letter:  "Comparable sprinkler heads manufactured by Vi-

22  king's competitors, Tyco and Reliable, have a fusible link approximately the same

23  size as the VK456.  Thus, the VK457 has a smaller link than the VK456 . . .."  Ac-

24  tual truth:  The statement is extremely misleading and implies that the physical size

25  of the link is somehow meaningful to strength.  All manufacturers' links go through

26  the same UL strength test.  This misleading assertion questions the recognized test-

27  ing that is conducted by UL and relied upon by Authorities Having Jurisdiction

28  throughout California and the United States.

-5-

d.      From letter: "The VK456 and the Reliable and Tyco sprinkler heads, have not experienced prematurely activations." Actual truth: The VK456 did experience confirmed heat related activations in California, Arizona and Texas while it was on the market, and one other manufacturer acknowledged in deposition activation with its sprinkler.

e.      From letter: "The analysis to date reflects that the VK457 sprinkler heads that have prematurely activated, have voids in the solder joint of the fusible link." Actual truth: This is a false statement for all of the following reasons. Not all of the links have been evaluated or even found. Not all of the links that have been found show voids. It is not possible to discern the original solder topography or see voids after an activation and separation of the links.

21.    In March 2016, VOLMER of FSS and HULLEMAN of THORPE communicated false and disparaging information about VIKING products to UL. UL is an American consulting and certification company headquartered in Northbrook, Illinois. It maintains offices in 46 countries. UL conducts the listing testing for residential sprinklers used in the United States. After testing the production samples of the VK457, UL did not identify any defect with the VK457. Although UL's conclusion was conveyed to them, the Defendants continue to maintain and publish statements that the VK457 is defective or has design defects.

22.    On November 18, 2016, HULLEMAN and KNEZ distributed a document entitled "Viking VK 457 Activations Without Fire: Expert Analysis and Facts of Product Defects" to various entities and individuals, including the Northern California Fire Marshal's Association. The document included the same false and misleading information referenced in paragraphs 20 and 21 and was intended by the Defendants to disparage VIKING products and to interfere with customer relationships.

23.    That same document, "Viking VK 457 Activations Without Fire: Expert Analysis and Facts of Product Defects" in PowerPoint form, was distributed to

numerous homebuilders, including Toll Brothers, and installer customers of VI-KING products.

24.    The actions of the Defendants described above directly caused millions of dollars in damage to VIKING as described in detail below.  VIKING's 2014 market share in California was in excess of 55%, but by 2015 it had gone down to 32% and by 2016 it had dwindled to approximately 15%.

25.    The Defendants' false and misleading statements have caused injury to VIKING, and unless enjoined will continue to injure VIKING's goodwill, and will inhibit growth of its market share, causing significant damages.  In addition to an immediate injunction, VIKING seeks an order requiring the Defendants to immediately identify each and every customer, prospective customer, and any other persons or entities to whom the Defendants gave a copy of any of the offending materials (or conveyed the information contained therein in any form or manner, including verbally), and that the Defendants also immediately distribute corrective notices (in approved form) that retract all false and misleading information distributed to date.

26.    Symons Fire Protection, KPS Sprinkler, Millenium Fire Protection-Camarillo, A & D Fire Protection and Victory Fire Protection are a small sampling of customers which had purchased residential sprinklers from VIKING but that ceased doing so as a result of the receipt of the false and misleading communications and written materials from the Defendants.  VIKING has hundreds of California customers and virtually all of them have either ceased purchasing products from VIKING altogether or have drastically reduced their purchases.

27.    VIKING alleges special damages in the amounts stated as follows:  In 2014, A & D Fire Protection purchased $23,464.66 of VIKING products, in 2015 it purchased none and has purchased none thereafter; in 2014, Symons Fire Protection purchased $18,377.93 of VIKING products, in 2015 it purchased none and has purchased none thereafter; and in 2014, Millenium Fire Protection-Camarillo pur-

-7-

chased $74,311.28 of VIKING products, in 2015 it purchased only $18,060.05 and in 2016 it purchased none.  These special damages are incurred by VIKING as a result of the Defendants' conduct.  In fact, VIKING's residential sprinkler customers in California purchase on average 62% less from VIKING currently than in 2014, the year that the Defendants' campaign against VIKING began.  This Complaint will be amended to allege additional special damages after VIKING has the opportunity to discover further facts concerning their affected customers and their purchases.

## FIRST CLAIM FOR RELIEF

### (Product Disparagement in Violation of the Lanham Act, 15 U.S.C. § 43(a))

### (Against All Defendants)

28.    VIKING repeats, re-alleges, and incorporates the allegations set forth in paragraphs 1 through 27 above as if fully set forth herein.

29.    The Defendants have made and are making use of false and/or misleading statements of fact about Plaintiffs' products in their communications with VIKING's customers and others as alleged herein with the intent to damage VIKING.

30.    The Defendants' false and/or misleading statements have actually deceived or have the capacity to deceive a substantial portion of the intended audience in the relevant marketplace, including VIKING's customers.

31.    The Defendants' false and/or misleading statements of fact are material in that they are likely to influence the purchasing decisions of customers in the market for products manufactured and sold by VIKING.

32.    The Defendants' false and/or misleading statements have caused injury to VIKING and unless enjoined, the Defendants will continue to irreparably injure VIKING's goodwill and market share.  In addition, the Defendants' anticompetitive behavior and false and misleading advertising have caused and will continue to cause monetary harm to Plaintiffs by diverting sales away from Plaintiffs that oth-

1  erwise would have gone to Plaintiffs and generally by damaging Plaintiffs' reputa-
2  tion.

3      33.   The Defendants' representations in their communications, spreadsheets
4  and other materials have traveled in interstate commerce.

5      34.   The Defendants' conduct constitutes product disparagement in viola-
6  tion of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

7      35.   Based on the Defendants' false and/or misleading advertisements, VI-
8  KING is entitled to an order disclosing the names and contact details of all recipi-
9  ents of the false information, a preliminary injunction, and a permanent injunction.

10      36.   The balance of the harms supports issuance of an order disclosing the
11  names and contact details of all recipients of the false information, and a permanent
12  injunction.

13      37.   Issuance of an order disclosing the names and contact details of all re-
14  cipients of the false information and permanent injunction would promote the pub-
15  lic interest.

16      38.   VIKING has suffered and will continue to suffer irreparable harm and
17  monetary damages, including lost profits, all as a result of the Defendants' false
18  and/or misleading communications as generally alleged herein.

19      39.   The Defendants have used the false and or/misleading communica-
20  tions and materials as alleged herein and have damaged Plaintiffs.

21      40.   As described in 15 U.S.C. § 1117, VIKING is entitled to treble dam-
22  ages as a result of the Defendants' violation of 15 U.S.C. § 1125(a).

23      41.   This is an exceptional case as described in 15 U.S.C. § 1117 that enti-
24  tles VIKING to reasonable attorneys' fees.

25  **SECOND CLAIM FOR RELIEF**

26  **(Unfair Business Practices in Violation of Cal. Bus. & Prof. Code § 17200)**

27  **(Against All Defendants)**

28      42.   VIKING repeats, re-alleges, and incorporates the allegations set forth

1  in paragraphs 1 through 41 above as if fully set forth herein.

2       43.    The Defendants have engaged in a course of conduct of disparaging

3  Plaintiffs' products by making numerous false and/or misleading statements to VI-

4  KING's customers, installers and trade associations to entice them to purchase al-

5  ternative or substitute products.  The Defendants' conduct has damaged and

6  continues to damage VIKING.

7       44.    The Defendants' false and/or misleading statements and publication of

8  false materials, which are intended to entice prospective and existing customers to

9  reject Plaintiffs' products and to instead choose different products and services,

10  constitute unfair competition under California law, and the Defendants have violat-

11  ed and are violating the provisions of the California Business and Professions Code

12  §§ 17200, et seq.

13       45.    VIKING is informed and believes that customers and prospective cus-

14  tomers have been misled in reliance on the deceptive and unfair trade practices.

15       46.    VIKING is informed and believes that as a result of the deceptive and

16  unfair trade practices, VIKING has lost existing customers.

17       47.    As a result of the Defendants' deceptive and unfair trade practices,

18  VIKING is entitled to an order requiring disclosure of the names and contact details

19  of all recipients of the false information, a preliminary injunction, and a permanent

20  injunction.

21       48.    The balance of the harms supports issuance of an order disclosing the

22  names and contact details of all recipients of the false information, a preliminary

23  injunction, and a permanent injunction.

24       49.    Issuance of an order disclosing the names and contact details of all re-

25  cipients of the false information, a preliminary injunction, and a permanent injunc-

26  tion would promote the public interest.

27       50.    VIKING has suffered and will continue to suffer irreparable harm and

28  monetary damages and lost profits, all as a result of the Defendants' misleading and

-10-

1  false statements.

## THIRD CLAIM FOR RELIEF

### (Intentional Interference with Prospective Economic Advantage)

### (Against All Defendants)

51.   VIKING repeats, re-alleges, and incorporates the allegations set forth in paragraphs 1 through 50 above as if fully set forth herein.

52.   Economic relationships existed among VIKING and D.R. Horton, Lennar, Shea, Pulte, VanDaele, VSN, and others containing a probable future economic benefit or advantage to Plaintiffs.

53.   The Defendants knew of the existence of these relationships;

54.   The Defendants engaged in wrongful conduct by communicating false and misleading information to third parties designed to interfere with or disrupt these relationships;

55.   The Defendants did so with the intent to interfere with or disrupt this relationship, or with the knowledge that the interference or disruption was certain or substantially certain to occur as a result of their actions;

56.   The economic relationships were actually interfered with or disrupted; and

57.   The wrongful conduct of the Defendants which was designed to interfere with or disrupt this relationship caused damage to VIKING.

## FOURTH CLAIM FOR RELIEF

### (Trade Libel/Product Disparagement)

### (Against All Defendants)

58.   VIKING repeats, re-alleges, and incorporates the allegations set forth in paragraphs 1 through 57 above as if fully set forth herein.

59.   The Defendants published and used false and misleading communications and written materials that defamed and disparaged the quality of VIKING's products as described herein.

-11-

60.     The Defendants should have recognized that such publication was likely to result in pecuniary loss to VIKING, particularly in that many of the matters published were literally false.

61.     The Defendants published the false materials with the intent to harm VIKING or, in the alternative, that it was foreseeable that harm would result.

62.     Such publication was unprivileged, and otherwise carried out with malice.

63.     Such publication by the Defendants resulted in pecuniary harm to VIKING as described herein.

64.     The Defendants provided the false information to D.R. Horton, Lennar, Shea, Pulte, and VanDaele, among others, with the result that these companies elected to specify that their contractors/installers purchase other fire protection sprinkler systems and not Plaintiffs'. The loss of the installers identified in paragraph 27 as VIKING customers also caused special damages to VIKING in the amounts specified therein. On information and belief, the installers identified in paragraph 27 above purchased sprinklers from competitors of VIKING, all to VIKING's loss and damage. The Defendants' use and publication of the false and misleading communications and written materials caused VIKING special damages in the amount of at least those identified in paragraph 27. In addition to the specific customers identified in paragraph 27 above and the special damages alleged therein, VIKING's 2014 residential sprinklers sales in California were 55,000 VK457 sprinklers per month, in 2015 those sales dropped to 30,000 VK457 sprinklers per month and in 2016 only 14,000 VK457 sprinklers per month are being sold. VIKING suffered a decrease in sales from every residential sprinkler customer after 2014. In addition to the actual loss of VK457 sprinkler sales, VIKING also loses on average of $25.00 in sales revenue of other related sprinkler system products for every sprinkler sold, and estimates total lost sales of $29,550,000 to date.

65.     VIKING hereby reserves the right to identify and recover from the De-

-12-

1  fendants for additional lost sales and additional special damages flowing from the

2  Defendants' use of the false materials or the representations contained therein,

3  based on the information of additional sales lost as a result of the false materials

4  provided to other customers, which will be identified in discovery.

## PRAYER FOR RELIEF

6      WHEREFORE, VIKING seeks relief as follows:

7      1.    A permanent injunction enjoining the Defendants and their respective

8  officers, agents, servants, employees, attorneys, successors and assigns, and all oth-

9  ers in active concert or participation, from disseminating any false and misleading

10  statements, including the statements set forth in this Complaint, which are incorpo-

11  rated herein;

12      2.    An order that the Defendants identify each and every recipient of the

13  false and/or misleading materials (and/or the information contained therein);

14      3.    Compensatory, lost profits, and other damages, including punitive

15  damages, available at law to compensate VIKING for the injuries caused by the

16  Defendants' misconduct;

17      4.    Prejudgment and post-judgment interest on any monetary award to

18  VIKING;

19      5.    Treble damages under 15 U.S.C. § 1117;

20      6.    A finding that this is an "exceptional" case under 15 U.S.C. § 1117,

21  and an award of attorneys' fees and costs;

22      7.    Such other and further relief as this Court deems just and proper.

23  Dated:  December 16, 2016.

FOX ROTHSCHILD LLP

26  By _____
    DAVID F. FAUSTMAN

27      L. PETER RYAN
    Attorneys for Plaintiffs THE VIKING COR-

28      PORATION; VIKING GROUP, INC.; and
    SUPPLY NETWORK, INC.

-13-

## **DEMAND FOR JURY TRIAL**

Plaintiffs THE VIKING CORPORATION; VIKING GROUP, INC.; and SUPPLY NETWORK, INC. hereby demand trial by jury on all issues so triable herein.

Dated:  December 16, 2016.

FOX ROTHSCHILD LLP

By _____
DAVID F. FAUSTMAN
L. PETER RYAN
Attorneys for Plaintiffs THE VIKING COR-
PORATION; VIKING GROUP, INC.; and
SUPPLY NETWORK, INC.

-14-